DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant the State of Ohio ("State"), has appealed from a decision of the Loarain County Court of Common Pleas that granted Defendant-Appellee Tommie Davis's motion to suppress. This Court reverses and remands.
 I {¶ 2} On February 9, 2002, Elyria Police Department ("EPD") Officers Buckway and Fairbanks were patrolling the Southpark Apartment complex located at 1864 Middle Avenue in Elyria, Ohio. An agreement existed between the management staff of the apartment complex and the EPD that officers would stop and arrest any unescorted, non-resident visitors of the complex and charge them with criminal trespass. The agreement was the result of the management staff's belief that the apartment complex was home to continuing illegal activities, including but not limited to the sale, distribution, and use of crack cocaine.
 {¶ 3} On the date in question, Officer Buckway observed Appellee enter Building B of the complex, emerge within five minutes, and leave the complex on foot. Because Officer Buckway did not recognize Appellee as a resident of Southpark and Appellee was not escorted by a resident of Southpark, officer Buckway approached him to determine his name and the name of the Building B resident he had just visited. When Appellee was unable to tell the officer who he was visiting at the complex, or even which building he had just entered and exited at the complex, Officer Buckway checked Appellee's name against the Southpark "no trespass" list. Discovering that Appellee had been placed on the "no trespass" list in the year 2000, he was placed under arrest for criminal trespass at the Southpark complex. Incident to Appellee's arrest, Officer Fairbanks immediately searched Appellee and found a cigarette cellophane wrapper hidden in the headband of his baseball cap. The wrapper contained what later proved to be crack cocaine.
 {¶ 4} As a result of the foregoing, Appellee was indicted on July 3, 2002, on one count of possession of cocaine, in violation of R.C.2925.11(A); one count of possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1); and one count of criminal trespassing, in violation of R.C. 2911.21(A)(2). Appellee entered a plea of not guilty to all charges on January 8, 2003. Soon after, he filed a motion to suppress all of the evidence garnered by the State as a result of Appellee's arrest, including the crack cocaine and any statements Appellee made while in custody, claiming that he was the victim of an illegal search and seizure by the EPD.
 {¶ 5} In his motion to suppress, Appellee asserted that his stop by police at Southpark was unlawful and, therefore, probable cause to arrest him did not arise even though he was on the "no trespass" list. Appellee also argued that statements he made while in custody were in violation of his Fifth Amendment right against self-incrimination and both his Fifth and Sixth Amendment rights to counsel as applicable to the states under the Fourteenth Amendment to the United States Constitution.
 {¶ 6} On February 4, 2003, a hearing was held on Appellee's motion to suppress, at which time the trial court granted the motion.
 {¶ 7} Appellant has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One
"The trial court erred as a matter of law by granting appellee's motion to suppress since appellee's stop on February 19, 2002[,] was lawful, supported by reasonable suspicion[,] and the subsequent arrest was supported by probable cause."
 {¶ 8} In its first assignment of error, the State has argued that the trial court erred when it granted Appellee's motion to suppress evidence obtained during Appellee's arrest. The State has claimed that the stop of Appellee was lawful because it was supported by reasonable suspicion. It has further contended that as a result of the lawful stop, Appellee was found to be in violation of R.C. 2911.21(A)(2), thus giving rise to probable cause for his arrest. We agree.
 {¶ 9} An Appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court assumes the role of the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, appeal not allowed (1996), 77 Ohio St.3d 1488, quoting State v. Venham (1994),96 Ohio App.3d 649, 653. As a result, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998), 127 Ohio App.3d 414, 416.
 {¶ 10} The Fourth Amendment to the United States Constitution provides: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Section 14, Article I of the Ohio Constitution contains language nearly identical to that of the Fourth Amendment, "and its protections are coextensive with its federal counterpart." State v.Kinney (1998), 83 Ohio St.3d 85, 87, certiorari denied (1999),526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 214. Excluding evidence obtained in violation of these constitutional protections is a vital part of the guarantee against unlawful searches and seizures. See Mapp v.Ohio (1961), 367 U.S. 643, 648, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
 {¶ 11} Ohio's criminal trespass law states, in pertinent part:
"No person, without privilege to do so, shall do any of the following:
"* * *
"(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard[.]" R.C. 2911.21(A)(2).
 {¶ 12} The State has argued that the trial court erred when it granted Appellee's motion to suppress the evidence against him. Specifically, the State argued that the stop of Appellee at the complex was lawful because it was supported by the reasonable suspicion that Appellee was engaged in the crime of criminal trespass. Furthermore, the State argued that once it was determined that Appellee was on the "no trespass" list, probable cause to arrest him arose thus making his arrest for criminal trespass a lawful arrest. Appellee, on the other hand, has argued that because he could not have been convicted of criminal trespass, the officers' act of stopping him for criminal trespass was unconstitutional. It appears that Appellee has argued that because the stop was unconstitutional, anything arising from the stop, i.e., the subsequent arrest and search of Appellee, and the discovery of his crack cocaine, must be suppressed.
 {¶ 13} Before we begin our analysis of the issues on appeal to this Court, we note that in its order granting Appellee's motion to suppress, the trial court did not make specific findings of fact; instead, the trial court's journal merely states that "[Appellee's] [m]otion to [s]uppress is hereby granted." Consequently, we can afford no deference to the trial court's findings of fact because there were none. Therefore, our decision must rely on the testimony transcribed from the suppression hearing to determine whether the trial court properly granted Appellee's motion.
 {¶ 14} There is a long line of case law concerning the brief police stop of an individual to ascertain if criminal conduct is afoot; such a stop is commonly referred to as a Terry stop.[1]
"As was first articulated in the seminal case of Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, a police officer is allowed to briefly stop an individual when the officer reasonably suspects that the individual is involved, or has been involved, in criminal behavior. In order for such a stop to be constitutionally permissible, the officer's level of suspicion does not have to be as great as is necessary to support a finding of probable cause; instead, the officer must have only a `reasonable suspicion' of criminal behavior." State v. Miller,117 Ohio App.3d 750, 756-57.
 {¶ 15} To be a constitutionally valid Terry stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. Furthermore, the Ohio Supreme Court has stated that the reasonableness of the officer's conduct must be viewed in the totality of the circumstances surrounding the stop. Statev. Bobo (1988), 37 Ohio St.3d 177, 179, certiorari denied (1988),488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252.
 {¶ 16} At the hearing on Appellee's motion to suppress, Officer Buckway testified that he and Officer Fairbanks were working as a two-man unit assigned to patrol 1864 Middle Avenue of the Southpark Apartment complex. The area was characterized by Officer Buckway as "a high crime area, particularly high drug activity area [and a place where] [n]umerous arrests [were] made for [the] purchase of narcotics from that complex." Officer Buckway testified that due to the high rate of crime and drug activity in the area, there was an "agreement" between the EPD and the management company of Southpark that the EPD would "act as agents for [Southpark management staff] to enforce a criminal trespass law." At the suppression hearing, Attorney Gregory A. Kinlin, Assistant Prosecuting Attorney for the State of Ohio, described the agreement as follows:
"[T]he Elyria Police Department acts as an agent at the South Park Apartment complex for people who are criminally trespassing on the property. General policy of the Elyria Police is that if someone is trespassing without a resident, they stop them, ask who they're there to see. If they're not there to see anybody, they usually give them a warning the first time, tell them to stay off the property.
"And there are signs posted all over the property that states that trespassing is [not] allowed [sic]. And when a person is seen again on the property trespassing, they generally arrest them for criminal trespass. In this case, the defendant was found in possession of cocaine. That's why we have the original charge."
 {¶ 17} Officer Buckway testified that he had been part of the patrol team at the Southpark complex for approximately two years. He further testified that while on patrol on February 9, 2002, he observed a blue car parked on South Maple Street, a street adjoining the Southpark complex. Appellee exited the car, entered the Southpark complex on foot, and went into Building B of the complex. Building B was described by Officer Buckway as "the number one building that people have gone to [in order to] purchase narcotics[.]" Appellee remained in Building B for a few moments, then exited and started to walk toward the blue car parked on Maple Street. Officer Buckway was immediately suspicious of Appellee's presence at the complex because of his quick trip into Building B and the fact that Officer Buckway did not recognize Appellee as a resident of the complex. The Officer stated that "[b]ased on my experience in working that area, people will commonly drop someone off on South Maple or park on South Maple to go into the complex on foot, predominantly, to purchase narcotics."
 {¶ 18} Officer Buckway further testified that once Appellee exited Building B, he and Officer Fairbanks stopped him and asked him why he was at the complex and who he was visiting. Appellee was unable to answer the questions and could not tell the officers the name of anyone he was visiting at the complex. In addition, he incorrectly told the officers he had entered Building A of the complex rather than Building B. Based on Appellee's inability to answer these basic questions, the officers decided to determine if he was on the Southpark "no trespass" list. Discovering that he was on the list, the officers placed Appellee under arrest for criminal trespass.
 {¶ 19} Incident to his arrest for criminal trespass, Officer Fairbanks searched Appellee. When Officer Fairbanks removed Appellee's baseball cap, he discovered a cellophane wrapper tucked into the headband of the hat. The cellophane wrapper later proved to contain two rocks of crack cocaine.
 {¶ 20} After thoroughly reviewing the record of the proceedings below, we find that the brief stop of Appellee to determine if he was engaged in criminal activity, namely if he was in violation of the Southpark "no trespass" list or engaged in other criminal activity, was a lawful Terry stop. Officer Buckway was an experienced EPD Officer who, based upon his years of regular patrols of Southpark, could distinguish residents of the complex from non-residents of the complex. His years of regularly patrolling Southpark also trained him to recognize the confluence of events that marked a drug transaction either in progress or recently completed. In this case, parking on South Maple and making a quick trip into Building B was such a confluence. We find that Officer Buckway's recognition of Appellee as a trespasser along with Appellee's activity while at the complex combined to create a reasonable suspicion on the part of Officer Buckway that Appellee was involved in, or was recently involved in, criminal activity. Therefore, his brief stop of Appellee to inquire as to his activities at Southpark was a valid Terry stop and thus constitutionally permissible.
 {¶ 21} Next, we turn to the issue of probable cause for the warrantless arrest of Appellee. It is well established that a warrantless arrest done without probable cause is unconstitutional. State v. Timson
(1974), 38 Ohio St.2d 122, paragraph one of the syllabus. Probable cause arises when "the facts and circumstances within [a police officer's] knowledge and of which [he has] reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief" that criminal conduct was afoot. Carroll v. United States
(1924), 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 555. If, after being arrested, a defendant asserts that probable cause was lacking at the time of arrest, the state bears the burden of proof on the issue of whether probable cause existed at the time of arrest. Xenia v. Wallace
(1988), 37 Ohio St.3d 216, paragraph two of the syllabus.
 {¶ 22} The State asserted that it met its burden of proof on the issue of probable cause to arrest Appellee based on Appellee's inability to tell the officers which Southpark building he had been in or which Southpark resident he had visited on the date in question. The presence of probable cause to arrest was bolstered, according to the State, when the officers discovered that Appellee was on the Southpark "no trespass" list and consequently in violation of R.C. 2911.21(A)(2). Although Appellee took issue with the "no trespass" list in his appellate brief, he did not cross-appeal the constitutionality of the "no trespass" list and we, therefore, will not reach that question. That said, this Court finds that Appellee's violation of the "no trespass" list created probable cause for his arrest. Furthermore, we find that the State did meet its burden of proof on the issue of probable cause to arrest Appellee. The trial court improperly concluded that the State failed to meet its burden of proof that the Terry stop and the subsequent warrantless arrest and search of Appellee were unlawful. Based on our review of the proceedings below, Appellee's motion to suppress should have been denied. Consequently, the State's first assignment of error is well taken.
 Assignment of Error Number Two
"The trial court erred as a matter of law when it suppressed the state's evidence of Crack cocaine because the search of appellee was lawful and incidental to his arrest for criminal trespass at the Southpark Apartment complex."
 {¶ 23} In its second assignment of error, the State has argued that the trial court erred when it granted Appellee's motion to suppress evidence of the crack cocaine found in Appellee's baseball cap when the police searched him. The State has argued that Appellee's arrest was lawful and, therefore, the search of Appellee and subsequent discovery of crack cocaine in his baseball cap was also lawful. We agree.
 {¶ 24} It is undisputed by either party to this action that the crack cocaine seized from Appellee was discovered incident to his arrest for criminal trespass at the Southpark apartments. It is also undisputed by either party that a warrantless search is per se unreasonable unless it falls under one of the established exceptions to such a search. SeeOhio v. Bing (1999), 134 Ohio App.3d 444, 447, quoting State v. Myers
(1997), 119 Ohio App.3d 376, 379-80. Therefore, if Appellee's arrest was lawful, evidence discovered incident to his lawful arrest is not subject to exclusion.
 {¶ 25} Based on our disposition of Appellant's first assignment of error, this Court finds that the crack cocaine is admissible against Appellee because it was obtained during a search incident to a lawful arrest. Therefore, the trial court erred when it granted Appellee's motion to suppress the crack cocaine discovered in his baseball cap. Consequently, the State's second assignment of error is well taken.
 III {¶ 26} The State's assignments of error are sustained. The judgment of the trial court is reversed and the cause remanded for proceeding consistent with this opinion.
Judgment reversed, and cause remanded.
Carr, J., and Baird, P.J. concurs in judgment only.
[1] Appellant did not argue that the stop of Appellee fell under the parameters of a consensual encounter between the EPD officers and Appellee. Therefore, we will not reach the issue of whether the contact was a consensual encounter. We will simply address Appellant's assignments of error as argued and analyze the contact under the rubric of a Terry stop.