DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Coya Lee Tellington has appealed from his conviction for trafficking in cocaine, in violation of R.C. 2925.03(A)(1). He has also appealed from the trial court's decision denying his motion to suppress. This Court affirms.
 I {¶ 2} On January 27, 2004 Appellant was indicted on one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1) with a major drug offender specification pursuant to R.C. 2929.01(X).[1] The charges stemmed from events of June 11, 2003 when Appellant sold crack cocaine to a confidential informant ("C.I.") of the Summit County Drug Unit.[2]
 {¶ 3} Prior to trial, Appellant filed a motion to suppress statements he had made to Kevin Borchert ("Borchert"), an agent with the U.S. Drug Enforcement Agency ("DEA") on July 16, 2003 regarding the June 11, 2004 "controlled buy." The trial court denied his motion. On June 4, 2003, Appellant's charge of trafficking in cocaine proceeded to a one day jury trial at which time he was found guilty of the offense as charged in the indictment. Appellant was sentenced to three in years in prison as a result of his conviction.
 {¶ 4} Appellant has timely appealed his conviction of trafficking and the trial court's decision denying his motion to suppress, asserting three assignments of error. We have rearranged the order of his assignments of error for ease of analysis.
 II Assignment of Error Number Three
"The trial court erred in not suppressing statements of the appellant made while in custody."
 {¶ 5} In his third assignment of error, Appellant has argued that the trial court erred when it refused to suppress statements made by Appellant to Borchert. Specifically, Appellant has argued that while he was being questioned by Borchert and other law enforcement officers on July 16, 2003, Appellant was actually in police custody yet not advised of his constitutional rights against selfincrimination and the assistance of counsel pursuant to Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694. We disagree.
 {¶ 6} It is well established that a trial court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Davis, 9th Dist. No. 03CA008228, 2003-Ohio-5900, at ¶ 9. As the trier of fact in a suppression hearing, the trial court is best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, appeal not allowed (1996), 77 Ohio St.3d 1488. As a result, this Court will accept the trial court's findings of fact so long as those findings are supported by some competent, credible evidence. Davis, at ¶ 9. However, the trial court's legal conclusions are afforded no deference and reviewed by this Court de novo. State v. Russell (1998),127 Ohio App.3d 414, 416.
 {¶ 7} The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination, which is applicable against the states through the Due Process Clause of theFourteenth Amendment. State v. Amore, 9th Dist. No. 03CA008281, 2004-Ohio-958, at ¶ 7, citing Malloy v. Hogan (1964), 378 U.S. 1,84 S.Ct. 1489, 12 L.Ed.2d 653. Once a person has been taken into custody or otherwise deprived of his freedom in any significant way, he must be advised of certain constitutional rights. Miranda, 384 U.S. at 471-472. Pursuant to Miranda, "once police begin a custodial interrogation, they must use procedures to warn the person in custody of his right to remain silent and his right to counsel." Amore, at ¶ 7, citing Miranda,384 U.S. at 471-472.
 {¶ 8} However, Miranda rights only attach when both custody and interrogation coincide. State v. Wiles (1991), 59 Ohio St.3d 71, 83, certiorari denied (1992), 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59. It is well established that "custody" for purposes of Miranda exists only when a person's freedom of movement is restrained to the degree associated with that of a formal arrest. California v. Beheler (1983),463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275. The question of whether or not an individual is in custody must be answered by the trial court on a case by case basis, with the trial court looking to the specific facts and circumstances of each case. Amore, at ¶ 8, citingState v. Warrell (1987), 41 Ohio App.3d 286, 287. The trial court must determine "whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'"State v. Gumm (1995), 73 Ohio St.3d 413, 429, certiorari denied (1996),516 U.S. 1177, 116 S.Ct. 1275, 134 L.Ed.2d 221, quoting U.S. v.Mendenhall (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497
(plurality opinion).
 {¶ 9} In the instant matter, Appellant has argued that he was in police custody on July 16, 2003, when he made incriminating statements to Borchert regarding the "controlled buy." He has further argued that his motion to suppress the incriminating statements, filed prior to trial, should have been granted by the trial court because Borchert and other officers present at the July 16, 2003 questioning violated his Miranda
rights when they failed to advise him of his constitutional right against self-incrimination while in custody. In response, the State has argued that Appellant was not in custody on July 16, 2003 when he made the self-incriminating statements, and thus his Miranda rights had not attached.
 {¶ 10} In its judgment entry wherein it denied Appellant's motion to suppress, the trial court made the following findings:
"[O]n July 16, 2003 authorities were observing the activities of [Appellant] at the [hotel]. They were informed [Appellant] is in room 241 [of] the hotel. They then rented room 242 and called [Appellant] on the telephone and asked him to come to their room for a discussion of his activities. At that invitation [Appellant] then came over to the room occupied by [U.S. Drug Enforcement Administration Officer] Borchert and another, and talked for approximately one hour. It appears that [Appellant] made voluntary statements. He was not in custody and therefore the Miranda rules do not apply to this statement of [Appellant]."
 {¶ 11} Our review of the transcript of the suppression hearing reveals that Borchert testified to the following for the State. On July 16, 2003, he was working in concert with the Summit County Drug Unit. Appellant was the target of a drug trafficking investigation and was under surveillance. While under surveillance, Appellant went to a local hotel and rented a room. Borchert rented the hotel room across the hall, called Appellant on the telephone, and asked Appellant if he would come to Borchert's room and engage in a conversation. Appellant came to Borchert's hotel room under his own free will, remained in the unlocked room of his own free will, and engaged in conversation with Borchert and two other law enforcement officers for approximately one hour. During the course of the conversation, Borchert informed Appellant that Appellant was not in custody and not under arrest. Borchert also informed Appellant that law enforcement had evidence that Appellant had recently engaged in a "controlled buy" and, as a result, Appellant was subject to prosecution. Borchert also told Appellant that if Appellant cooperated in the police investigation of drug trafficking in Summit County by disclosing the identity of his cocaine customers and cocaine source, Appellant "could receive prosecutorial consideration at the time of his sentencing" for the "controlled buy." Appellant agreed to this arrangement, began to aid police in their investigation of the drug trade in Summit County and, as a result, was not arrested for the June 11, 2003 controlled buy. Borchert completed a report memorializing his conversation with Appellant and used the report to refresh his memory of the events of June 11, 2003 while on the witness stand. Several months after his conversation with Appellant, Appellant reneged on his arrangement with law enforcement and was subsequently arrested and charged with trafficking in cocaine stemming from the June 11, 2003 "controlled buy."
 {¶ 12} The foregoing testimony convinces us that the trial court's finding that Appellant was not in custody was supported by competent, credible evidence. Furthermore, we find that a reasonable person in Appellant's position would have felt free to leave the hotel room and terminate the interrogation: the door was not locked, Appellant had gone to the hotel on his own free will, and Appellant was specifically told that he was not under arrest or in custody. As a result, we also agree with the trial court's legal determination that Appellant's Miranda
rights had not attached at the time he made the self-incriminating statement. It follows that the trial court properly denied Appellant's motion to suppress the statements that he made to Borchert in the hotel room. Appellant's third assignment of error lacks merit.
 Assignment of Error Number One
"Appellant's conviction of trafficking in cocaine was contrary to the manifest weight of the evidence."
 Assignment of Error Number Two
"The trial court erred in failing to grant appellant's criminal rule 29 motion to dismiss the trafficking charge following the conclusion of the state's case."
 {¶ 13} In his first assignment of error, Appellant has argued that his conviction was against the manifest weight of the evidence. In his second assignment of error, Appellant has argued that his conviction was based on insufficient evidence. In both assignments of error, he has argued that because law enforcement personnel did not see him give the C.I. cocaine, and because no fingerprints were taken to determine who had handled the bags of cocaine, his conviction should be overturned. We disagree.
 {¶ 14} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley aka G-Money (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution.State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 15} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (emphasis omitted).
 {¶ 16} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 17} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 18} Appellant was convicted of trafficking in cocaine, in violation of R.C. 2925.03(A)(1). Pursuant to R.C. 2925.03(A)(1), "No person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]"
 {¶ 19} Appellant has argued that there was no physical evidence linking Appellant to the "controlled buy" to the C.I., and the only evidence that supported his conviction was the C.I.'s testimony that Appellant sold the C.I. drugs on June 11, 2003. In response, the State has argued that the evidence presented at trial, including but not limited to Appellant's July 16, 2003, admission to Borchert that he committed the crime as charged, served as the proper basis for his conviction.
 {¶ 20} Our review of the record reveals that the State put on four witnesses at trial: the CI.; Odiest Washington ("Washington") of the DEA crime lab in Chicago, Illinois; Michael Zimcosky ("Zimcosky") of the Akron Police Department; and Borchert. The C.I. testified to the following. He had been a C.I. for several years and on June 11, 2003 was working in concert with the DEA to effectuate a "controlled buy" of cocaine from Appellant. During the week prior to June 11, 2003, the C.I. spoke with Appellant and arranged the "controlled buy." The C.I. was to come to Appellant's place of business in Akron, Ohio, to make the purchase. The C.I. informed Zimcosky of the scheduled transaction, and police put Appellant's place of business under surveillance. On June 11, 2003, the C.I. was taken to an area near Appellant's place of business, searched for any drugs or money, then given marked money to use to purchase the cocaine. The C.I. was wearing a microphone that transmitted and recorded his conversations with Appellant and others potentially involved in the drug transaction inside Appellant's place of business. Once inside Appellant's place of business, the C.I. gave Appellant the marked money and Appellant gave the C.I. 75 grams of crack cocaine. The C.I. left the place of business, met up with Zimcosky, and gave Zimcosky the cocaine.
 {¶ 21} On cross-examination, defense counsel highlighted the C.I.'s prior criminal conviction for cocaine distribution, as well as the C.I.'s history of personal drug use.
 {¶ 22} Washington testified for the State and testified to the following. He is a forensic chemist with the DEA. He tested the material given to Zimcosky by the C.I. and determined that it was cocaine.
 {¶ 23} Zimcosky testified to the following for the State. He is a police officer assigned to the Summit County Drug Unit and supervised the "controlled buy" between the C.I. and Appellant. Appellant was not arrested at the time of the controlled buy because of a continuing large-scale drug trafficking investigation. The C.I. had arranged a controlled buy from Appellant for June 11, 2003. On that date, the C.I. was taken to an area near Appellant's place of business, searched, given $2,700 in marked money, and placed under constant video and audio surveillance. The C.I. entered Appellant's place of business. Soon thereafter, Appellant entered his place of business. Zimcosky monitored the C.I.'s conversation with Appellant and heard the drug transaction take place. The C.I. was then seen leaving Appellant's place of business. The C.I. met up with police, was searched, and gave Zimcosky the cocaine the C.I. had purchased from Appellant. The cocaine was sent to a crime lab in Chicago for testing and verification.
 {¶ 24} Zimcoksy identified the video surveillance tape and audio tapes, which were played in open court, and stated that they accurately reflected the events that transpired on June 11, 2003.
 {¶ 25} Borchert testified to the following for the State. He is a DEA agent and was assigned to the Summit County Drug Unit. He was not involved in the "controlled buy" between the C.I. and Appellant. However, on July 16, 2003, Borchert spoke with Appellant about the "controlled buy" of June 11, 2003, at which time Appellant admitted to selling drugs to the C.I. Appellant also disclosed to Borchert the names of his other customers, as well as the name of his cocaine source. Appellant initially cooperated with law enforcement and was, therefore, not charged with trafficking in cocaine as a result of the June 11, 2003 "controlled buy." However, Appellant stopped cooperating with law enforcement and was subsequently charged with trafficking in cocaine as a result of the June 11, 2003 "controlled buy."
 {¶ 26} Several exhibits were admitted into evidence, including an audio cassette recording of the C.I.'s conversation with Appellant on June 11, 2003 during the "controlled buy"; the video surveillance tape made by police on June 11, 2003 of the "controlled buy"; the cocaine purchased by the C.I. from Appellant; the DEA report authenticating the cocaine; a photocopy of the $2,700 in marked money used to purchase the cocaine; and the 30-day tag registration for Appellant's car.
 {¶ 27} Appellant did not present any witnesses at trial.
 {¶ 28} Our review of the record convinces us that Borchert's testimony that Appellant admitted to selling cocaine to the C.I. combined with the evidence and testimony presented at trial was more than enough evidence to support Appellant's conviction for trafficking in cocaine. Even though no one saw Appellant hand the cocaine to the C.I., this Court has previously held that "[c]ircumstantial evidence from which a jury could infer culpability possesses the same probative value as direct evidence." (Alterations sic.) State v. Wooden (Feb. 11, 1998) 9th Dist. No. 18448, at 7, appeal not allowed (1998), 82 Ohio St.3d 1411, citing Jenks,61 Ohio St.3d 259, paragraph one of the syllabus. Therefore, the jury was entitled to infer that Appellant sold cocaine to the C.I. on June 11, 2003 based upon the testimony presented by the C.I. as well as the audio and video tapes that placed Appellant at the scene of the "controlled buy" and otherwise corroborated the C.I.'s testimony. As a result, this Court concludes that Appellant's conviction for trafficking in cocaine was based upon sufficient evidence and not against the manifest weight of the evidence. Appellant's first and second assignments of error lack merit.
 III {¶ 29} Appellant's three assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Batchelder, J. concur
[1] The major drug offender specification was dropped on May 18, 2004 on motion by the State.
[2] Such a transaction is commonly referred to as a "controlled buy."