[Cite as *State v. Scott*, **2016-Ohio-1480.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                            Court of Appeals No. S-15-012

    Appellee                                         Trial Court No. 14 CR 830

v.

Miller L. Scott                                         **DECISION AND JUDGMENT**

    Appellant                                        Decided:  April 8, 2016

* * * * *

Thomas L. Stierwalt, Sandusky County Prosecuting Attorney,
and Norman P. Solze, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

Miller L. Scott, pro se.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

**{¶ 1}** This is an *Anders* appeal.  Appellant, Miller Scott, appeals the judgment of

the Sandusky County Court of Common Pleas, sentencing him to 60 months in prison

following a jury trial in which he was found guilty of one count of burglary and one count of assault. We affirm.

## A. Procedural Background

{¶ 2} This matter originated upon an indictment entered on December 1, 2014, charging appellant with one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree, and one count of aggravated assault in violation of R.C. 2903.12(A)(1), a felony of the fourth degree. These charges stemmed from an incident that occurred during the early morning hours of September 11, 2014, at a home in Fremont, Ohio. According to the indictment, appellant trespassed into the home, which was occupied at the time, by removing a window air conditioner and entering through the window. Upon entry, appellant proceeded to the bedroom and assaulted an occupant, A.S., who was sleeping at the time.

{¶ 3} Appellant pleaded not guilty to the charges contained in the indictment, and, following the completion of discovery and other pretrial matters, a jury trial commenced on March 12, 2015.

{¶ 4} At trial, the state called several witnesses. The first witness, Officer Antonio Olvera of the Fremont Police Department, was one of the officers who responded to the scene of the burglary on the morning in question. Upon arrival at the scene of the burglary, Olvera noticed that the owner of the home, Pamela Decker, was standing in her pajamas outside the home. Olvera proceeded to enter the home, where he noticed

2.

appellant sitting by the doorway with his head in his hands. Appellant's forehead was bleeding. Olvera questioned appellant as to why his forehead was bleeding, and appellant indicated that he was struck in the head with a table after being invited into the house by Decker. He stated that Decker invited him to the house via text message, and offered to show the text messages to Olvera. Olvera testified that appellant searched his phone for the text messages, but was unable to locate them. When pressed further, appellant stated that A.S. was the one who struck him in the head with the table. Appellant stated that he then began to fight with A.S. At first, appellant indicated that he entered the home through the front door. However, at the end of Olvera's questioning, appellant stated that Decker let him into the home through the back door.

{¶ 5} After questioning appellant, Olvera moved to a nearby bedroom where A.S. was being held. Inside the room, Olvera noticed that A.S. had a cut on his face. When asked about the cause of the cut on his face, A.S. told Olvera that he was assaulted by appellant while in bed. Startled, A.S. responded by striking appellant with a coffee table, allegedly in self-defense.

{¶ 6} After speaking with appellant and A.S., Olvera questioned Decker as to the events that transpired earlier in the morning. Decker stated that she was in bed when she heard appellant pounding on the window and demanding to be allowed into the home. Decker then heard a noise, "and the next thing she knew, she saw [appellant] in the bedroom. When [appellant] started assaulting [A.S.], that's when she ran out."

3.

{¶ 7} During Olvera's testimony, the state entered several photographs into evidence. One of these photographs depicts a window air conditioner unit sitting on the ground outside one of the windows in the home, its power cord still plugged into the wall inside the home. Another photograph depicts damage to the window frame and debris on the floor, consistent with the stripping of the air conditioner unit from the window. Appellant explained that the air conditioning unit was knocked out of the window during the fight. However, Olvera testified that no blood was found near the window. Indeed, Olvera stated that blood was only visible inside the bedroom and around the bedroom door, where the two were fighting when officers arrived on the scene. No blood was found near the front door or back door.

{¶ 8} Following the completion of Olvera's testimony, the state called A.S. to the stand. A.S. testified that he was present at Decker's home on the morning of the burglary. He stated that he went into the bedroom at around midnight and fell asleep. A.S. was awoken by the sound of pounding on a window, and he testified that he heard appellant demanding to be allowed inside the home. Shortly thereafter, appellant entered the bedroom. Upon entering the bedroom, appellant proceeded to punch A.S. in the nose, causing him to roll off of the bed. The two began to wrestle and, according to A.S., appellant punched him "a couple times" and bit him in the forehead and cheek. The fight then moved into the living room. Police arrived a short while later and broke up the fight.

4.

{¶ 9} When pressed on cross-examination, A.S. acknowledged that he did not see appellant enter the home. However, A.S. maintained that he and Decker were the only persons inside the home on the morning of the burglary. Further, A.S. stated that he and Decker were inside the bedroom when appellant entered the home. Regarding appellant's contention that the air conditioner was knocked out of the living room window during the fight, A.S. testified that he did not come into contact with the air conditioner during the fight, which occurred on the opposite side of the room from the air conditioner.

{¶ 10} Next, Decker took the stand. Decker recalled receiving a text message from appellant, her ex-boyfriend, several hours prior to the burglary, in which appellant asked to come over to her home. According to Decker, she informed appellant that she would have to "take a rain check" because she was not feeling well. Decker testified that she did not grant appellant permission to enter her home on the morning of the burglary. She stated that appellant gained access to the home by removing the air conditioner from the living room window and climbing into the home through the window. Decker acknowledged that she did not observe appellant removing the air conditioner, but she stated that she overheard him as he was removing the air conditioner. She also testified that both entry doors on the home were locked at the time of the burglary.

{¶ 11} After Decker's testimony was complete, the state rested. After appellant's Crim.R. 29 motion was denied, appellant took the stand and denied having entered

5.

Decker's home without permission.  Specifically, appellant explained the events as follows:

> When the bars closed, I went over to [Decker's] house.  I knocked on the door.  Nobody answered.  I went and knocked on the bedroom window, and I heard her wrestling around, so I went back and I knocked on the front door again, then she came and she opened the door, and she told me, she said meet me in the bedroom, I'll be right in, and she walked toward the kitchen.  When I went into the bedroom, I reached up for the light on the overhead * * *.  When I * * * reached for it, all I seen was bright stars and somebody grabbed me in a choke hold and took their hand and started digging in my eye trying to scratch my eye out.  About this time, I could feel like fluid running all [down] my face, and I reached back and I grabbed him and I flipped him over.  I hit him a couple times, and I bit him, and when I bit him, he screamed, * * * and that's when I knew it was [A.S.], so we fought in the bedroom.  I'm almost at the point of bleeding to death [because] I'd lost so much blood, and when I came to again, I was standing in the middle of the living room and there was a police officer holding my arm to hold me up because I was getting ready to fall [because] I'd lost so much blood.

{¶ 12} Regarding Decker's assertion that the front door was locked the entire morning, appellant insisted that the front door was previously kicked in by a neighbor

6.

and never repaired. While he did not deny that the front door was locked, appellant indicated that the damage to the door was such that it could be easily pushed open even when locked. He also testified that he previously secured the air conditioner to the window frame with screws at Decker's request. At the end of direct examination, appellant stated that Decker allowed him into the home through the front door. He further testified that he did not enter the home through the living room window.

{¶ 13} On cross-examination, appellant could not explain why he changed his story while responding to Olvera's questions about how he entered the home. He stated that he was "delirious" as a result of losing so much blood from the fight with A.S., but he later acknowledged that he was not given any blood when he was transported to the emergency room later in the morning.

{¶ 14} At the conclusion of the trial, the jury found appellant guilty of burglary and assault, but not guilty of aggravated assault. The trial court proceeded to sentencing, at which point the court found that the burglary and assault charges were subject to merger. The state elected to proceed on the burglary count, and the trial court sentenced appellant to 60 months in prison. Appellant timely appealed.

## B. *Anders* Requirements

{¶ 15} Appointed counsel has filed a brief and requested leave to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Under *Anders*, if, after a conscientious examination of the case, counsel concludes the appeal to be wholly frivolous, she should so advise the court and request

7.

permission to withdraw. *Id*. at 744. This request must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* In addition, counsel must provide the appellant with a copy of the brief and request to withdraw, and allow the appellant sufficient time to raise any additional matters. *Id.* Once these requirements are satisfied, the appellate court is required to conduct an independent examination of the proceedings below to determine if the appeal is indeed frivolous. *Id.* If it so finds, the appellate court may grant counsel's request to withdraw, and decide the appeal without violating any constitutional requirements. *Id.*

{¶ 16} Having reviewed the brief filed by appellant's counsel, we find that counsel has satisfied the requirements set forth in *Anders*. Appellant has also submitted a pro se brief. Thus, we will examine appellant's assignments of error in addition to the assignments of error proposed by appellant's counsel.

## C. Assignments of Error

{¶ 17} In her *Anders* brief, appellant's counsel proposes the following assignments of error:

> Proposed Assignment of Error One: Appellant was denied Equal Protection when the only African-American was struck from the jury.

> Proposed Assignment of Error Two: Appellant's counsel rendered ineffective assistance by failing to properly preserve the *Batson* error for review.

8.

Proposed Assignment of Error Three: Appellant's convictions are unsupported by sufficient evidence and are against the manifest weight of the evidence.

Proposed Assignment of Error Four: The trial court erred in failing to order a presentence investigation report, erred in sentencing appellant, and erred in imposing the costs of court-appointed counsel.

{¶ 18} Additionally, in appellant's pro se brief, he assigns the following errors for our review:

ASSIGNMENT OF ERROR ONE: Appellant's Court Appointed Counsel rendered ineffective [a]ssistance by failing to file a pre-trial motion to suppress evidence tainted by constitutional Miranda Rights [v]iolations.

ASSIGNMENT OF ERROR TWO: Appellant's Court Appointed Counsel rendered [i]neffective [a]ssistance by failing to seek an expert medical opinion to the severity of hi[s] client's [h]ead injury.

ASSIGNMENT OF ERROR THREE: Appellant's Court Appointed Counsel rendered ineffective assistance by failing to object to Prosecutor's [l]ayman medical testimony.

ASSIGNMENT OF ERROR FOUR: Appellant's Court Appointed Counsel rendered ineffective [a]ssistance by failing to object to the Prosecutor using recanted [h]earsay evidence in his closing arguments.

## II. Analysis

### A. *Batson* Challenge

{¶ 19} In counsel's first proposed assignment of error, she argues that appellant's equal protection rights were violated when the trial court struck the only African American prospective juror from the jury. In her second proposed assignment of error, counsel contends that appellant was rendered ineffective assistance of trial counsel because trial counsel failed to ensure the record was clear as to the racial composition of the jury pool, thereby failing to preserve a *Batson* challenge for our review.

{¶ 20} "Criminal defendants have a constitutional right to be tried by a jury selected by nondiscriminatory criteria." *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, --- N.E.3d ----, ¶ 20, citing *Batson v. Kentucky*, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the United States Supreme Court stated that a prosecutor may not "challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89, 106 S.Ct. 1712.

{¶ 21} Consistent with the court's holding in *Batson*, a trial court must apply a three-step analysis when confronted with a claim of racially-based challenges to jurors. *Batson* at 96. Under the first step, a defendant must make a prima facie case that the prosecutor is engaged in racial discrimination. *Id.* at 96-97. To do this, the party must show that he is a member of a cognizable racial group, that the peremptory challenge will remove a member of his race from the venire, and that there is an inference of racial

10.

discrimination. *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 98, 676 N.E.2d 872 (1997). "In determining whether a prima facie case exists, the trial court must consider all relevant circumstances, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members has been exhibited." *State v. Swain*, 6th Dist. Erie No. E-12-079, 2014-Ohio-1308, ¶ 17, citing *Hicks* at 98.

{¶ 22} If the defendant establishes a prima facie case, the next step requires the prosecutor to provide a racially neutral explanation for the challenge. *Batson* at 97-98. Although a simple affirmation of good faith is not sufficient, the explanation "need not rise to the level justifying exercise of a challenge for cause." *Hicks* at 98. The critical issue is whether discriminatory intent is inherent in counsel's use of the strike and that the explanation is merely a pretext for excluding the potential juror on the basis of race. *Id.*

{¶ 23} Finally, in the third step, the court must decide whether the defendant has proved purposeful racial discrimination, taking all of the circumstances into consideration. *Batson*, 476 U.S. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). "In doing so, the court must consider the circumstances of the challenge and assess the plausibility of the prosecutor's explanation in order to determine whether it is merely pretextual." *Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, --- N.E.3d ----, at ¶ 21, citing *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. Relevant factors may

11.

include "the prosecutor's demeanor; * * * how reasonable, or how improbable, the explanations are; and * * * whether the proffered rationale has some basis in accepted trial strategy." *Miller-El* at 339. "In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor * * *, making the trial court's firsthand observations of even greater importance." *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).

{¶ 24} When reviewing a claim of racially-motivated challenges to jurors on appeal, we defer to the trial court's resolution under *Batson* absent a showing of clear error. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 53.

{¶ 25} In this case, the trial court permitted the state to strike a prospective juror, A.J., from the jury. According to appellate counsel, A.J. was the only African American prospective juror, although counsel acknowledges that the record is silent as to the racial makeup of the jury pool. During voir dire, A.J. responded in the affirmative when the prospective jurors were asked whether they personally knew any of the witnesses. When questioned further, A.J. informed the court that A.S., the victim of the assault, is her uncle. She was then asked whether she would give more weight to A.S.'s testimony than any other witness's testimony. She responded: "Um, I guess I would be uncertain. I don't know, I couldn't give you a guarantee that I would or wouldn't." A.J. subsequently indicated a desire not to act as a juror since A.S. was involved in the case.

{¶ 26} At the end of voir dire, the state asked that A.J. be stricken from the jury, opting to use one of its peremptory challenges. The state recognized that striking A.J.

12.

from the jury presented a *Batson* issue, but insisted that its challenge was not motivated by race. Rather, the state noted that A.J.'s uncle was a witness, and further explained that A.J. did not wish to serve as a juror.

{¶ 27} Defense counsel did not object to the state's use of its peremptory challenge. Instead, defense counsel appears to have agreed with the state's basis for striking A.J., although the trial transcript is not completely clear on this point.

{¶ 28} Even assuming appellate counsel is correct in her assertion that A.J. was the only African American prospective juror in this case, we find that the trial court did not commit clear error in striking A.J. from the jury. Indeed, the state offered racially-neutral bases for its peremptory challenge, including the preexisting relationship between A.J. and A.S., and A.J.'s equivocation as to whether she would assign more weight to A.S.'s testimony than the testimony given by other witnesses. Moreover, there is no evidence in the record to suggest that the state's explanation was pretextual.

{¶ 29} Accordingly, counsel's first proposed assignment of error is not well-taken.

{¶ 30} Having found no *Batson* violations even after assuming the validity of counsel's allegations that A.J. was the only African American prospective juror, it follows that appellant cannot demonstrate that he was prejudiced by his trial counsel's failure to note A.J.'s race for the record, or to state the fact that A.J. was the only African American prospective juror. Having failed to establish prejudice, which is a necessary element in an ineffective assistance of counsel argument, *Strickland v. Washington*, 466

13.

U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we find that counsel's second proposed assignment of error is not well-taken.

## B.  Sufficiency and Manifest Weight

{¶ 31} In counsel's third proposed assignment of error, she argues that appellant's convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 32} The Ohio Supreme Court has ruled that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  At its core, sufficiency of the evidence is a determination of adequacy and a court must consider whether the evidence was sufficient to support the conviction as a matter of law. *Id.*  The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 33} In contrast, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins* at 387.  When reviewing a manifest weight claim,

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220.

**{¶ 34}** As noted above in our recitation of the facts, appellant was convicted of one count of burglary in violation of R.C. 2911.12(A)(1), and one count of assault in violation of R.C. 2903.13(A). R.C. 2911.12 provides, in relevant part:

> (A) No person, by force, stealth, or deception, shall do any of the following:

> (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense.

**{¶ 35}** We have previously stated that "the elements of burglary under R.C. 2911.12(A)(1) require the state to prove that the defendant (1) by force, stealth, or deception (2) trespassed in an occupied structure when another person other than an accomplice was present (3) with the purpose to commit any criminal offense therein." *State v. Phillips*, 6th Dist. Lucas No. L-14-1061, 2015-Ohio-632, ¶ 13.

15.

{¶ 36} Upon consideration, we find that the state introduced sufficient evidence as to each of these elements. Regarding the force element, Decker and A.S. testified that appellant entered the home by pulling the air conditioner from the window frame and crawling through the window. This testimony was supported by pictures entered into evidence showing the air conditioner lying on the ground outside the window, still plugged into the wall, with debris inside the home that appears to be consistent with forced entry.

{¶ 37} The trespass element was supported by Decker's statement that she did not grant appellant permission to enter her home on the morning of the burglary. The text messages between appellant and Decker, which were entered into evidence, indicate that Decker did not wish for appellant to come to her house because she was not feeling well.

{¶ 38} Finally, Decker's testimony contained sufficient evidence to meet the purpose element. Decker stated that appellant, while knocking on the bedroom window, told her that she would need to call the police if she did not allow him inside the home, suggesting that he was going to commit a criminal offense once inside.

{¶ 39} Turning to appellant's conviction for assault, R.C. 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." The evidence in this case clearly demonstrates that a fight occurred between A.S. and appellant, a fact that appellant did not deny in his testimony at trial. While appellant testified that he was not the aggressor in this fight, both Decker and A.S.

16.

refuted this testimony when they stated that appellant punched A.S. while A.S. was sleeping in Decker's bedroom.

{¶ 40} Viewing the foregoing evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of burglary and assault proven beyond a reasonable doubt. Moreover, having weighed the evidence and all reasonable inferences therefrom, and having considered the credibility of the witnesses, we find that this is not the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, counsel's third proposed assignment of error is not well-taken.

## C. Sentencing Issues

{¶ 41} In her fourth proposed assignment of error, counsel argues that the trial court erred at sentencing by failing to order a presentence investigation report, imposing the costs of court-appointed counsel, and sentencing appellant to 60 months in prison.

{¶ 42} First, counsel argues that the trial court erred in failing to order the preparation of a presentence investigation report prior to sentencing. Crim.R. 32.2 provides: "In felony cases the court shall, and in misdemeanor cases the court may, order a presentence investigation and report before imposing community control sanctions or granting probation." Further, R.C. 2929.19 requires that the court consider the presentence investigation report, "if one was prepared," and R.C. 2951.03 prevents the imposition of community control until a written presentence investigation report has been reviewed by the court. Where it has been determined that a defendant is not eligible for

17.

community control, the trial court does not err in refusing to order a presentence investigation report. *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992).

{¶ 43} According to the sentencing transcript, the court refused to order a presentence investigation report based upon its finding that a prison sentence was warranted and that appellant was not amenable to community control. Thus, we find no merit to counsel's argument concerning the trial court's refusal to order a presentence investigation report.

{¶ 44} Next, counsel argues that the trial court erred in ordering appellant to pay the costs of court-appointed counsel under R.C. 2941.51(D), which provides, in relevant part:

> The fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay.

{¶ 45} Here, the trial court specifically found that appellant had the ability to pay the costs of his court-appointed counsel. This finding was supported by appellant's testimony at trial that he was currently employed, which was reiterated by counsel at sentencing. Thus, we find no error in the trial court's imposition of costs for court-appointed counsel.

18.

{¶ 46} Finally, we turn to counsel's argument that the trial court, in sentencing appellant, did not comply with the sentencing requirements outlined in the Revised Code.

{¶ 47} We review felony sentences under the two-prong approach set forth in R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a disputed sentence if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 48} Having reviewed the record at the sentencing hearing and the subsequent judgment entry, we find that the trial court adhered to the statutory sentencing requirements. Since appellant was convicted of burglary, a felony of the second degree, R.C. 2929.13(B), which governs sentencing for fourth and fifth degree felonies, does not apply. Moreover, the court specifically found that appellant was not amenable to community control. Consequently, a presumption in favor of prison time was applicable under R.C. 2929.13(D). R.C. 2929.14(B)(2)(e) and (C)(4) are inapplicable here as appellant is not a repeat violent offender and the court did not impose consecutive sentences. Likewise, R.C. 2929.20(I), relating to hearings on motions for judicial release, does not apply in this case.

19.

**{¶ 49}** Regarding the principles and purposes of sentencing under R.C. 2929.11 and the sentencing factors contained in R.C. 2929.12, we note that the trial court did not expressly indicate its consideration of these statutes. However, the court demonstrated its consideration of the principles and purposes of sentencing when it stated the following at the sentencing hearing: "My obligation is to attempt to protect the public from future crime and to craft an appropriate punishment for * * * your behavior." Further, we have stated that "[a] sentencing court is not required to use any specific language to demonstrate that it considered the applicable seriousness and recidivism factors under R.C. 2929.12." *State v. Williams*, 6th Dist. Sandusky No. S-12-039, 2014-Ohio-2693, ¶ 8, citing *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). Indeed, the Supreme Court of Ohio has stated: "where the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18, fn. 4, citing *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), paragraph three of the syllabus.

**{¶ 50}** Turning to whether appellant's sentence was contrary to law, we note that appellant's 60-month prison sentence was within the acceptable range of punishment for a felony of the second degree. R.C. 2929.14(A)(2). Thus, we find that the sentence was not contrary to law.

20.

**{¶ 51}** In light of the foregoing, we find that the trial court did not err in its imposition of sentence in this case. Accordingly, counsel's fourth proposed assignment of error is not well-taken.

### D. Appellant's Pro Se Ineffective Assistance Arguments

**{¶ 52}** In each of appellant's pro se assignments of error, he contends that he received ineffective assistance of trial counsel.

**{¶ 53}** In order to demonstrate ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694.

**{¶ 54}** In his first assignment of error, appellant argues that his counsel was ineffective for failing to file a motion to suppress evidence that was obtained during law enforcement's initial questioning of appellant at Decker's home. Appellant contends that this evidence should have been suppressed since Olvera did not inform him of his Miranda rights prior to questioning him.

**{¶ 55}** Concerning the applicability of Miranda warnings, the Supreme Court of Ohio has stated: "the requirement that police officers administer Miranda warnings applies only when a suspect is subjected to both custody and interrogation." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 24. In other words,

21.

"Miranda rights only attach when both custody and interrogation coincide." *State v. Tellington*, 9th Dist. No. 22187, 2005-Ohio-470, ¶ 8, citing *State v. Wiles*, 59 Ohio St.3d 71, 83, 571 N.E.2d 97 (1991). The appropriate inquiry for determining if an individual has been placed in custody is whether, under the totality of the circumstances, a reasonable person would believe he is not free to leave. *State v. Gumm,* 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995), citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 56} Here, appellant was not in custody during Olvera's questioning. Indeed, appellant advances no argument and points to no facts that would suggest that he was not free to leave during Olvera's initial questioning. Thus, appellant's Miranda rights did not attach. Accordingly, appellant's trial counsel was not incompetent for failing to file a motion to suppress based on Olvera's failure to advise appellant of his Miranda rights.

{¶ 57} Furthermore, we find that appellant has failed to demonstrate a reasonable probability that the result of the proceedings would have been different had trial counsel filed a motion to suppress. Even after excluding the evidence obtained by Olvera during his conversation with appellant, the testimony provided by A.S. and Decker, coupled with the photographs taken at Decker's home on the morning of the burglary, provides ample evidence to support appellant's convictions and refute his trial testimony. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 58} In his second assignment of error, appellant argues that his trial counsel was ineffective for failing to introduce expert testimony as to the severity of the head

22.

injury he sustained during his fight with A.S. "[D]ecisions, such as the calling of witnesses, are within the purview of defense counsel's trial tactics." *State v. Lugli*, 6th Dist. Erie No. E-01-032, 2003-Ohio-479, ¶ 23, citing *State v. Coulter*, 75 Ohio App.3d 219, 230, 598 N.E.2d 1324 (12th Dist.1992). Thus, we find no merit to appellant's contention that his trial counsel was ineffective for failing to call an expert witness to establish the severity of his head injury. Moreover, appellant does not offer any explanation as to how his head injury impacted the outcome of this case. Therefore, his second assignment of error is not well-taken.

{¶ 59} In his third assignment of error, appellant urges that his trial counsel was ineffective insofar as counsel failed to object to the state's layman medical testimony.

{¶ 60} Having reviewed the record in its entirety, we fail to find any instances in which the witnesses called by the state at trial offered medical testimony. Contrary to appellant's assertions, no medical opinions requiring an expert were provided by the state in this case, and appellant fails to identify any such opinions in the record. Accordingly, appellant's third assignment of error is not well-taken.

{¶ 61} In his fourth assignment of error, appellant asserts that his counsel was ineffective for failing to object to the state's use of "recanted hearsay evidence" during closing arguments. Specifically, appellant objects to the state's use of Decker's statement that appellant entered her home and assaulted A.S., despite her further clarification that it was dark inside the bedroom. Appellant appears to be asserting that the state should not have been permitted to reference Decker's statement that appellant assaulted A.S.

23.

because the reliability of that statement was in question in light of Decker's testimony that it was hard to see in the bedroom because of poor lighting. What is unclear from appellant's brief is how these statements constituted hearsay. In any event, appellant has once again failed to indicate how he was prejudiced by the state's use of such statements during closing arguments. Thus, we find no merit to appellant's contention that trial counsel was ineffective in failing to object during the state's closing arguments.

{¶ 62} Accordingly, appellant's fourth assignment of error is not well-taken.

### III. Conclusion

{¶ 63} This court, as required under *Anders*, has undertaken our own examination of the record to determine whether any issue of arguable merit is presented for appeal. We have found none. Accordingly, we grant counsel's motion to withdraw.

{¶ 64} The judgment of the Sandusky County Court of Common Pleas is affirmed. Costs are hereby assessed to appellant in accordance with App.R. 24. The clerk is ordered to serve all parties, including the defendant if he has filed a brief, with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                            _____
                                                     JUDGE

Thomas J. Osowik, J.

Stephen A. Yarbrough, J.                   _____
CONCUR.                                              JUDGE

                                                       _____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.