[Cite as *State v. Gurley*, 2015-Ohio-5361.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 14CA3646 |
| v. | : | DECISION AND JUDGMENT ENTRY |
| TYA T. GURLEY, | : | |
| Defendant-Appellant. | : | RELEASED: 12/17/2015 |

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, Portsmouth, Ohio for appellee.

Hoover, P.J.

{¶ 1} Appellant-defendant Tya T. Gurley ("Gurley") appeals her convictions from the Scioto County Common Pleas Court. Specifically, Gurley challenges the trial court's judgment denying her motion to suppress any and all evidence obtained as a result of a traffic stop. A trooper with the Ohio State Highway Patrol stopped Gurley because she was following too closely to another vehicle. During the stop, a drug dog responded to the presence of drugs on Gurley's vehicle. After engaging in a discussion with the trooper for several minutes, Gurley admitted to having drugs inside her person and voluntarily went to a nearby Highway Patrol Post to remove the drugs. Following the trial court's denial of her motion to suppress, Gurley entered a plea of no contest to one count of trafficking in drugs and one count of tampering with evidence. The trial court sentenced Gurley to five years in prison.

{¶ 2} Here on appeal, Gurley presents two assignments of error: (1) the trial court erred by not suppressing her statements after she asked to call an attorney; and (2) the traffic stop was not lawful. After reviewing the entire record, we disagree with Gurley's contentions. We find that Gurley did not unequivocally and unambiguously invoke her right to counsel during the trooper's questioning. Therefore, the trooper was not required to cease his questioning. We also find that the trooper had reasonable suspicion and probable cause to stop Gurley's vehicle. Further, we find that the trooper had additional reasonable suspicion to investigate criminal activity beyond the scope of the original traffic violation. Consequently, we overrule Gurley's assignments of error and affirm the judgment of the trial court.

## I. Facts and Procedural Posture

{¶ 3} On September 17, 2013, complaints against Gurley for charges of possession of a controlled substance and tampering with evidence were filed in the Portsmouth Municipal Court. On October 24, 2013, the Scioto County Grand Jury indicted Gurley on one count of trafficking in heroin, a second degree felony, in violation of R.C. 2925.03(A)(2), one count of possession of heroin, a second degree felony, in violation of R.C. 2925.11(A) and one count of tampering with evidence, a third degree felony, in violation of R.C. 2921.12(A)(1). The charges stemmed from a September 16, 2013 traffic stop, where Gurley admitted to having drugs concealed inside her person. After the traffic stop, Gurley voluntarily went to a nearby Highway Patrol Post and removed heroin from her vagina. At arraignment, Gurley entered a plea of not guilty to the indicted offenses.

{¶ 4} On January 2, 2014, Gurley filed a motion to suppress any and all evidence obtained as a result of the traffic stop. Gurley asserted that the arresting officer lacked probable cause to stop her vehicle in violation of the 14th Amendment to the United States Constitution.

Gurley further argued that the duration of her detention was unlawful. On January 24, 2014, Gurley filed a supplemental motion to suppress. Gurley additionally asserted that the arresting officer's actions violated her right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 5} The trial court held a hearing on Gurley's motion to suppress on February 12, 2014. Gurley and Trooper Nick Lewis ("Trooper Lewis") of the Ohio State Highway Patrol, the trooper who stopped Gurley, testified at the hearing. During the suppression hearing, the State presented a recording of the traffic stop. Trooper Lewis's patrol cruiser was equipped with a dashboard video recorder and a microphone that captured audio only from the inside of the cruiser. Trooper Lewis's belt microphone was not operating during the traffic stop. We gathered the following facts from the video, audio, and testimony presented at the suppression hearing.

{¶ 6} On September 16, 2013, Trooper Lewis was driving south on State Route 23, having just left the Highway Patrol Post in Lucasville, Ohio. Gurley was also traveling south on State Route 23 in a silver Nissan. Trooper Lewis observed Gurley make a lane change from the left lane into the right lane. Trooper Lewis then observed Gurley follow in behind a white pickup truck. According to Trooper Lewis, Gurley followed approximately two car lengths behind the pickup truck. Trooper Lewis believed Gurley was traveling between 55 and 60 miles per hour. Trooper Lewis testified that Gurley maintained that following distance for about one half of a mile. According to Trooper Lewis, the Highway Patrol uses a "rule of thumb" that a driver should follow one car length behind the vehicle in front of them for every 10 miles per hour the driver is traveling. Trooper Lewis then noticed Gurley slow down to about 45 miles per hour, which was 10 miles per hour below the speed limit. At 7:40 p.m., Trooper Lewis decided to stop Gurley's vehicle.

{¶ 7} First, Trooper Lewis obtained Gurley's driver's license and information. Trooper Lewis recognized Gurley's last name from a previous traffic stop, in which he stopped Gurley and another woman in Chillicothe, Ohio. Trooper Lewis recalled that during that traffic stop, Gurley stated that she was going to Portsmouth, Ohio to look at a motorcycle. Trooper Lewis testified that Gurley was unable to give details about the motorcycle. Trooper Lewis also testified that the passenger did not know where they were going, rather, that she was just along for the ride. Trooper Lewis stated that those were common things he typically hears with drug activity.

{¶ 8} This time, Trooper Lewis again asked Gurley where she was going. Gurley responded that she was going to Portsmouth, Ohio to see her cousin. Gurley told Trooper Lewis that her cousin was enrolled at Shawnee State University. Trooper Lewis then requested that the drug dog unit investigate the scene. The drug dog unit was sitting at the nearby Highway Patrol Post. After completing a check of Gurley's records, Trooper Lewis discovered that she had a suspended license with limited driving privileges. According to Gurley, she could drive 50 hours per week. At 7:45 p.m., Trooper Lewis returned to the Gurley's vehicle with Trooper Shawn McLaughlin, the drug dog's handler. The dog made a quick pass of the vehicle and passively alerted to the presence of drugs.

{¶ 9} Trooper Lewis asked Gurley to step out of her vehicle. According to Trooper Lewis, he advised Gurley of her *Miranda* warnings; and she indicated that she understood the warnings. At the suppression hearing, Gurley admitted that Trooper Lewis read her the *Miranda* warnings; and when asked if she understood them, Gurley responded "Somewhat, yes." Gurley also testified that she was confused the whole time about her rights. Next, Trooper Lewis performed a pat down search on Gurley then placed her inside his police cruiser. Trooper Lewis

and Trooper McLaughlin then began to search Gurley's vehicle. Approximately two minutes into the search, Trooper Lewis returned to Gurley and engaged in the following exchange:

> Trooper Lewis: Ma'am, I'll be honest with you. I feel like we're just going to waste our time searching that car. I'm very confident you've got something concealed.
>
> Gurley: Okay. (Inaudible).
>
> Trooper Lewis: Okay. I'll give you the same opportunity I give every other female that comes through here with something shoved inside of them. All right?
>
> Gurley: Right.
>
> Trooper Lewis: I'm going to do whatever it takes to get it. So if I got to get a search warrant, I'll go that route. A search requires me going in, typing a search warrant, going down to the Judges [sic] house, sitting with you at the hospital all night until a doctor decides to come around, and we get the dope. Okay. Here's your other option. Other option is you cooperate with me, I take you right back there to the Highway Patrol post, you get it out, I give you - - I actually just do it as a direct indictment and you don't go to jail tonight. Basically, I don't want to be here all night doing paperwork.
>
> Gurley: But - - because you said- -hold on - -
>
> Trooper Lewis: I have the video of the last time you guys - - I stopped you. You guys had something on you.
>
> Gurley: Right.
>
> Trooper Lewis: Okay. So - -

Gurley: But you saying - -I'm not understanding. So you saying you have video

and record of me? [sic]

Trooper Lewis: I watched the video last time.

Gurley: Okay.

Trooper Lewis: You and that other girl that was with you. You guys said you

were coming down here to look - -to look at a motorcycle.

{¶ 10} The exchange continued with Gurley asking questions such as, why Trooper Lewis pulled her over, what is a direct incitement, if she was arrested, and what her rights were while she was detained. Trooper Lewis told Gurley, "Well, you're being detained. You won't actually get arrested until you give it to me or --." Trooper Lewis and Gurley continued as follows:

Trooper Lewis: You want to go home tonight. You going to- -

Gurley: I sure do want to go home.

Trooper Lewis: Well, then what will happen is I'll take you right back here to the

Highway Patrol Post where we have a female. That's the reason I took you over

there. We have a female up there. She'll escort you to the bathroom. She - - you

will put it in a bag and then that's it.

Gurley: Is there anybody I can call- -someone, a lawyer or anything, because I

don't- -I still don't - -I still don't understand.

Trooper Lewis: What are you having a problem with?

Gurley: Okay you said I'm being detained from prior - -

Trooper Lewis: No, for - -for this and then from what I heard on the video last

time.

\* \* \*

Trooper Lewis: Okay. Well, I'm not going to sit here and debate with you. I gave you your options.

Gurley: Right. And I asked if I can talk to someone because I still - -

Trooper Lewis: Well, I don't want you calling anybody.

Gurley: Because I'm bad at listen- -this is what I'm saying to you. I'm kind of dyslectic, [sic] and I'm trying to get - -wrap my mind around this.

Trooper Lewis: Well, listen, okay, I know you got something. All right.

Gurley: I don't have anything. That's why I'm - - that's what I'm not understanding.

Gurley continued asking Trooper Lewis questions and Trooper Lewis continued to insist that he knew she had something. Trooper Lewis also answered Gurley's questions about a search warrant, an indictment, and a body cavity search.

{¶ 11} Soon after, Trooper Lewis asked Gurley to step out of the car. According to his testimony at the suppression hearing, Trooper Lewis again tried to explain to Gurley the difference between receiving a citation and going into Municipal Court and having a direct indictment into the Common Pleas Court. Trooper Lewis testified that not "very long" after Gurley exited the cruiser, she stated that she had contraband inside of her and would "voluntarily remove it at the post." From the time Trooper Lewis initiated the stop of Gurley's vehicle to the time Trooper Lewis began driving back to the patrol post, approximately 30 minutes had passed.

{¶ 12} At the suppression hearing, Gurley denied ever shifting lanes and trailing behind a white truck. She testified that no cars were in front of her. Gurley testified that she felt as though

she was not allowed to call an attorney. At the conclusion of the suppression hearing, the trial

court denied Gurley's motion to suppress.

{¶ 13} In its judgment entry denying Gurley's motion to suppress, the trial court made

the following pertinent findings:

The vehicle [Gurley's] was in the left lane with no obstructions in front of it when

the Defendant saw Trooper Lewis and immediately switched behind a white

truck, where she was following one or two car lengths behind the vehicle.

* * *

The Defendant slowed down when she got behind the vehicle, and following too close,

from between 55 to 60 or 40 to 45, which caused Trooper Lewis to have some concern.

When Trooper Lewis pulled over the vehicle he recognized the name from a

traffic stop in Ross County when the Defendant stated she was going to

Portsmouth to look at a motorcycle; however, she could not really give any details

about that motorcycle, and therefore, Trooper Lewis made no arrest. However, at

a later date when Trooper Lewis was listening to a tape between the passenger in

the first stop and this Defendant, Trooper Lewis heard a conversation concerning

where they were hiding the drugs, which caused Trooper Lewis some suspicion.

* * *

All recordings from outside the vehicle were not picked up, perhaps because the battery

was dead on the radio. After much discussion, the Defendant did finally voluntarily

remove the contraband from herself at the post. The Defendant never stated that she did

not want to talk Trooper Lewis [sic]. The Defendant did say at one time something about

talking to an attorney or somebody, but at that time, Trooper Lewis simply advised the

Defendant what the difference between an investigative stop and being arrested at the

scene [sic].

∗ ∗ ∗

The Court makes a finding that five minutes is a very reasonable time within

which for Trooper Lewis to have gotten the dog there.

{¶ 14} On May 2, 2013, Gurley withdrew her plea of not guilty and entered a plea of no

contest to the one count of trafficking in drugs and the one count of tampering with evidence.

The trial court found Gurley guilty of those offenses. The trial court dismissed the remaining

count of possession of heroin. The trial court sentenced Gurley to five years in the custody of the

Ohio Department of Rehabilitation and Correction. Gurley then filed this timely appeal.

## II. Assignments of Error

{¶ 15} Gurley presents the following assignments of error for our review:

First Assignment of Error:

> The trial court erred by not suppressing defendant's statements after asking to call
> an attorney.

Second Assignment of Error:

> The traffic stop was not lawful.

## III. Standard of Review: Motion to Suppress

{¶ 16} We will address Gurley's assignments of error in reverse order. First, we will

discuss whether or not the traffic stop was lawful. Then, we will turn to Gurley's arguments that

Trooper Lewis violated her right to counsel. Our review of a trial court's decision on a motion to

suppress presents a mixed question of law and fact. *State v. Roberts,* 110 Ohio St.3d 71, 2006-

Ohio-3665, 850 N.E.2d 1168, at ¶ 100, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-

5372, 797 N.E.2d 71, at ¶ 8. When considering a motion to suppress, the trial court acts as the

trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Roberts* at ¶ 100, citing *Burnside* at ¶ 8.

### IV. Law and Analysis

### A. Second Assignment of Error: Lawful Justification for a Traffic Stop

{¶ 17} In her second assignment of error, Gurley argues that Trooper Lewis's stop of her vehicle was not lawful. In support of her argument, Gurley asserts the following: (1) the video of her traffic stop does not support Trooper Lewis's testimony at the suppression hearing; (2) her testimony at the suppression hearing was consistent with the traffic stop video; (3) she did not pull in behind a truck, but instead was at the head of a line of traffic; and (4) the trial court never made a finding of credibility as to Trooper Lewis or her. Therefore, Gurley concludes competent, credible evidence did not exist to find probable cause for the stop. Gurley contends that any evidence of drugs or statements as to drugs must be excluded.

{¶ 18} In rebuttal, the State argues that an officer need only have reasonable articulable suspicion to stop a vehicle. The State asserts that in this case, Trooper Lewis did have such suspicion when he initiated the stop of Gurley's vehicle. Additionally, the State contends that the duration of the stop was not unreasonable. The State asserts that the approximately five minutes and four seconds Gurley and Trooper Lewis waited for the drug dog to indicate contraband in the vehicle was not unreasonable for the issuance of a traffic citation.

{¶ 19} " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Shrewsbury,* 4th Dist. Ross No. 13CA3402, 2014–Ohio–716, ¶ 14, quoting *State v. Emerson,* 134 Ohio St.3d 191, 2012–Ohio–5047, 981 N.E.2d 787, ¶ 15. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion of the evidence obtained from the unreasonable search and seizure at trial." *Id.,* citing *Emerson* at ¶ 15; *see also State v. Lemaster,* 4th Dist. Ross No. 11CA3236, 2012–Ohio–971, ¶ 8 ("If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.").

{¶ 20} "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis,* 4th Dist. Scioto No. 08CA3226, 2008–Ohio–6691, ¶ 14; *see also State v. Eatmon,* 4th Dist. Scioto No. 12CA3498, 2013–Ohio–4812, ¶ 13 (quoting *Lewis).* "To be constitutionally valid, the detention must be reasonable under the circumstances." *Lewis* at ¶ 14. "While probable cause 'is certainly a complete justification for a traffic stop,' it is not required." *Eatmon* at ¶ 13, quoting *State v. Mays,* 119 Ohio St.3d 406, 2008–Ohio–4539, 894 N.E.2d 1204, ¶ 23. "So long as 'an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *Id.,* quoting *Mays* at ¶ 8. "Reasonable and articulable suspicion is a lower standard than probable cause." *Id.,* citing *Mays* at ¶ 23.

{¶ 21} Here, Trooper Lewis's and Gurley's testimonies conflicted during the suppression hearing about the initial traffic violation that prompted Trooper Lewis to stop the vehicle. Gurley denies that she was following a white truck; instead she testified that she was the leader of a line

of cars; and no vehicle was in front of her. Trooper Lewis testified that he witnessed Gurley switch lanes and follow too closely behind a white truck for one half of a mile. He then noticed Gurley slow to a speed 10 miles per hour below the speed limit.

{¶ 22} R.C. 4511.21 states, in pertinent part, " * * * no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." Trooper Lewis testified that the "rule of thumb" for following distance is one car length for every ten miles an hour a vehicle is traveling. The video from the dashboard camera begins by showing Gurley's vehicle alone in the right lane. Trooper Lewis testified that in the video, the white truck is just barely visible down the road. While the video does show a vehicle ahead of Gurley, in the distance, it is indeed difficult to conclude that the vehicle is a white truck. In the decision denying Gurley's motion to suppress, the trial court found that Gurley "slowed down when she got behind the vehicle, and following too close, from between 55 to 60 or 40 to 45, which caused Trooper Lewis to have some concern."

{¶ 23} As Gurley pointed out, the trial court did not make an express finding of credibility regarding Trooper Lewis's and Gurley's testimony. However, the trial court seemed to accept Trooper Lewis's testimony regarding Gurley's vehicle following too closely to a white truck. Pursuant to our standard of review on a motion to suppress, we will defer to the trial court's ability to resolve factual disputes. *Roberts*, *supra*, at ¶ 100. Nothing in the record suggests Trooper Lewis's testimony was not competent or credible. Therefore, we find that Trooper Lewis observed Gurley following too closely to another vehicle, in violation of R.C. 4511.21. Thus, having observed a traffic violation, Trooper Lewis had a reasonable and articulable suspicion and probable cause to stop Gurley's vehicle. *See State v. Taylor,* 4th Dist.

Washington No. 07CA11, 2008–Ohio–482, ¶ 15 ("It is well-settled that a law enforcement officer possesses both reasonable suspicion and probable cause to stop a vehicle when the officer observes a traffic violation.")

{¶ 24}  We next briefly address whether the duration of the stop was unlawful.[1] "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates." *State v. Aguirre,* 4th Dist. Gallia No. 03CA5, 2003–Ohio–4909, ¶ 36, citing *State v. Carlson,* 102 Ohio App.3d 585, 598, 657 N.E.2d 591 (9th Dist.1995). " 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id.,* quoting *Carlson* at 598; *see also State v. Cook,* 65 Ohio St.3d 516, 521–522, 605 N.E .2d 70 (1992) (fifteen minute detention was reasonable); *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (twenty minute detention was reasonable).

{¶ 25} Trooper Lewis's stop of Gurley's vehicle lasted approximately 30 minutes. Once Trooper Lewis recognized Gurley from the previous Chillicothe traffic stop, the stop became more about a drug investigation. Trooper Lewis never issued a traffic citation to Gurley. Trooper Lewis testified that when Gurley presented her driver's license, he discovered that she had limited driving privileges. He also testified that her privileges did not include visiting a cousin at Shawnee State University in Portsmouth. Trooper Lewis recognized Gurley's name from a previous traffic stop where, after he reviewed video from it, he suspected drug activity. Trooper Lewis radioed for a drug dog unit after Gurley presented her license and information.

---

[1] Although Gurley does not specifically contest the duration of the stop, the State, in its appellate brief, states that Gurley challenges the duration of the traffic stop.

{¶ 26} "An officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot." *State v. Rose,* 4th Dist. Highland No. 06CA5, 2006–Ohio–5292, ¶ 17, citing *State v. Robinette,* 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997). The *Robinette* court explained, at paragraph one of the syllabus:

> When a police officer's objective justification to continue detention of a person* *
> * is not related to the purpose of the original stop, and when that continued
> detention is not based on any articulable facts giving rise to a suspicion of some
> illegal activity justifying an extension of the detention, the continued detention to
> conduct a search constitutes an illegal seizure.

Conversely, "if a law enforcement officer, during a valid investigative stop, ascertains 'reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual.' " *Rose* at ¶ 17, quoting *Robinette* at 241.

{¶ 27} Moreover, "[r]ecognizing that 'detention, not questioning, is the evil' at issue,* * * so long as the traffic stop is valid, 'any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention .' " *State v. Chagaris,* 107 Ohio App.3d 551, 556–557, 669 N.E.2d 92 (9th Dist.1995), quoting *State v. Wright,* 9th Dist. Medina No. 2371–M, 1995 WL 404964, *3-4 (June 28, 1995).

{¶ 28} Given Trooper Lewis's discovery of Gurley's limited driving privileges, his recollection of the facts of his earlier stop with Gurley, and the drug dog's alert on Gurley's

vehicle, we find that he possessed reasonable suspicion to expand the scope of the stop. We do not find that the dog sniff prolonged the stop. *Rodriguez v. United States*, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), paragraph one of the syllabus ("Absent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable searches.") The dog completed a sniff of the car and alerted to the presence of drugs five minutes into the stop. Trooper Lewis testified that it takes him about 10 to 12 minutes to issue a citation during a normal traffic stop. Additionally, once the dog alerted to the presence of drugs, Trooper Lewis had probable cause to search Gurley's vehicle. *Eatmon*, 2013-Ohio-4812 at ¶ 17. (Quotations omitted.) ("When a drug dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle.") Accordingly, we find the duration of the traffic stop was not unlawful. Gurley's second assignment of error is overruled.

### B. First Assignment of Error: *Miranda* Right to Counsel

{¶ 29} In her first assignment of error, Gurley argues that the trial court erred by not suppressing her statements made to a police officer after she invoked her right to counsel. First, Gurley asserts she invoked her right to counsel, by stating, "Is there anybody I can call- someone, a lawyer or anything, because I don't - I still don't- I still don't understand." Gurley contends that a reasonable officer would have clearly understood that she was concerned about her rights and that she wanted to call an attorney. Gurley states that Trooper Lewis, nevertheless, continued his custodial interrogation. Gurley argues that she then reasserted her right to counsel, by later asking Trooper Lewis if she could call someone. Next, Gurley contends that it was the officer, not her, that repeatedly reinitiated the conversation after she invoked her right to counsel. As such, Gurley argues that there was not a clear waiver of her right to counsel. According to

Gurley, this was a clear violation of *Miranda* and all her statements after her invocation of counsel should have been excluded.

{¶ 30} In rebuttal, the State argues that (1) it was not clear that Gurley was asking to call an attorney and not some other person involved in her criminal activity; and (2) even if she did invoke her right to counsel, she reinitiated the conversation by asking additional questions concerning her options that night.

{¶ 31} "In *Miranda,* * * * the United States Supreme Court held that statements made during custodial interrogation, i.e. 'questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way,' are admissible only upon a showing that law enforcement officials followed certain procedural safeguards to secure the accused's Fifth Amendment privilege against self incrimination." (Emphasis sic.) *State v. Phillips*, 4th Dist. Highland No. 11CA11, 2011-Ohio-6773, ¶ 9, quoting *Miranda*, *supra*, at 444. Those safeguards include informing the defendant that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda* at 479.

{¶ 32} Neither Gurley nor the State raises the issue of whether Gurley was actually subjected to custodial interrogation. Because it is a crucial initial inquiry, however, we must discuss the issue sua sponte. "[T]he requirement that police officers administer *Miranda* warnings applies only when a suspect is subjected to both custody and interrogation." *State v. Dunn,* 131 Ohio St.3d 325, 2012–Ohio–1008, 964 N.E.2d 1037, ¶ 24. In other words, "Miranda rights only attach when both custody and interrogation coincide." *State v. Tellington,* 9th Dist. Summit No. 22187, 2005–Ohio–470, ¶ 8, citing *State v. Wiles,* 59 Ohio St.3d 71, 83, 571 N.E.2d

97 (1991). "Moreover, 'an individual has a right to counsel only when he is in custodial interrogation, as a suspect, or once adversary proceedings have commenced and he becomes a defendant. *See, e.g., Davis v. United States*, 512 U.S. 452, 456–457, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The person can only invoke that right during those times.' " *State v. Guysinger,* 4th Dist. Ross No. 11CA3251, 2012–Ohio–4169, ¶ 12, quoting *State v. Adams,* 11th Dist. Trumbull No.2003–T–0064, 2005–Ohio–348, ¶ 43.

{¶ 33} "[A]n individual has been placed into custody [if] * * *, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.' " *State v. Gumm,* 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995), quoting *U.S. v. Medenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The 'term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State v. Williams,* 4th Dist. Scioto No. 10CA3381, 2012–Ohio–6083, ¶ 18, quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

{¶ 34} In the case sub judice, Trooper Lewis told Gurley she was detained, while she sat inside the patrol cruiser. Trooper Lewis also initiated questioning when he told Gurley that he was going to retrieve the drugs in one of two ways, either by obtaining a search warrant or by Gurley voluntarily going to the Highway Patrol Post and removing the drugs herself. We find that Trooper Lewis knew, or should have known, that his actions and words would likely elicit an incriminating response from Gurley. Also, Trooper Lewis stated that he did not want to spend the night doing paperwork, inferring that Gurley's voluntary admission would be the most desirable outcome. Considering these facts, we find that Trooper Lewis subjected Gurley to

custodial interrogation. Accordingly, Trooper Lewis was required to administer *Miranda* warnings to Gurley.

{¶ 35} The record indicates that Trooper Lewis advised Gurley of her *Miranda* rights before placing her in his patrol cruiser. At the suppression hearing, Gurley testified that she remembered being *Mirandized*. When asked if she understood those warnings, Gurley responded "Somewhat, yes." However, Gurley also testified that she was confused the whole time about her rights. Trooper Lewis testified that Gurley said she understood the *Miranda* warnings. Gurley does not argue that she never received her *Miranda* warnings, that she did not understand them, or that she did not waive them. Instead, Gurley contends that during Trooper Lewis's custodial interrogation, she requested counsel, but Trooper Lewis continued his questioning, in violation of *Miranda*. Gurley also asserts that she did not initiate further discussions after she invoked her right to counsel.

{¶ 36} "When dealing with a claim that law enforcement continued to interrogate the accused after he invoked his right to counsel, the first question is 'whether the accused actually invoked his right to counsel.' " *State v. Jacobs*, 4th Dist. Highland No. 11CA26, 2013-Ohio-1502, ¶ 18 quoting *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). "[W]hen a suspect invokes his right to counsel, police officers must cease interrogation until counsel is present." *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4161, 793 N.E.2d 446, ¶ 24, citing, *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). " 'Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " (Internal quotations omitted). *Jacobs* at ¶ 18 quoting *Davis* 512 U.S. 452 at 459, 114 S.C.t. 2350, 129 L.Ed.2d 362 (1994). " 'But if a suspect makes a reference to an attorney that is ambiguous or

equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [the Court's] precedents do not require the cessation of questioning.' " (Emphasis sic). *Id.* quoting *Davis* at 459. " 'Rather, the suspect must unambiguously request counsel.' " *Id.* "The question whether a suspect invoked his or her right to counsel is an 'objective inquiry.' " *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, 938 N.E.2d 1060, ¶ 17 (9th Dist.), quoting *Davis* at 459. "Further, a suspect's alleged invocation must be examined 'not in isolation but in context.' " *Raber* at ¶ 17, quoting *State v. Murphy*, 91 Ohio St.3d 516, 520-521, 747 N.E.2d 765 (2001).

{¶ 37} "[I]f we find that the accused did invoke his right to counsel, we 'may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.' " *Jacobs* at ¶ 19, quoting *Smith* at 95, citing *Edwards*. " '[A]n accused * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' " *Jacobs* at ¶ 19, quoting *Edwards* at 484-485.

{¶ 38} During Trooper Lewis's questioning, Gurley stated, "Is there anybody I can call-someone, a lawyer or anything, because I don't - I still don't - I still don't understand." Trooper Lewis then asked Gurley, "What are you having a problem with?" Gurley continued asking Trooper Lewis why she was being detained; specifically asking about the prior stop and the dog hit on her vehicle. Trooper Lewis eventually stated that he was not going to debate with Gurley; that she had been given her options. Gurley then stated, "Right. And I asked if I can talk to someone because I still- -." Trooper Lewis responded, "Well, I don't want you calling anybody."

{¶ 39} In *Raber*, *supra*, the Ninth District Court of Appeals held that defendant's question, "[C]an I have an attorney?" to a detective did not invoke her right to counsel. *Id.* at ¶ 20-23. In *Raber*, the investigating officer arrested Raber, read Raber her *Miranda* rights, then walked her to his police car. *Id* at ¶ 21. Raber then became emotional and asked, "[C]an I have an attorney?" along with multiple questions about what would happen to her children. *Id.* at ¶ 21. The Ninth District concluded, "Given that Raber did not initially offer a response when read her *Miranda* warnings and that she coupled her question about an attorney with questions about her children, it is entirely reasonable that Officer Chuhi thought Raber was asking for clarification about her situation, not asserting her right to counsel." *Id.* citing *State v. Curtis*, 10th Dist. Franklin No. 05AP-795, 2006-Ohio-4230, ¶ 14; *State v. Foster*, 11th Dist. Trumbull No. 2000-T-0333, 2001-Ohio-8806, *9.

{¶ 40} The Ninth District cited analyses by the Ohio Tenth District Court of Appeals and the United States Eighth Circuit Court of Appeals regarding whether defendants' questions were inquiring about the right to counsel or actually invoking their right to counsel. In *Curtis*, the Tenth District reasoned:

> In the case at bar, defendant did not unambiguously, unequivocally request an
> attorney. Defendant's question, "[c]an I [get] a public defender?" can be
> interpreted in two different ways: either defendant was asking whether his rights,
> as he had just read them, included the right to a public defender or he was asking
> for access to a public defender. [The officer's] response—that defendant would be
> entitled to a public defender if he could not afford to hire an attorney—indicates
> that he believed defendant wanted a clarification of his rights, not that he sought
> to invoke his right to counsel. Given the ambiguity inherent in defendant's

question, we find that a reasonable police officer would come to the same

conclusion, and thus, [the officer's] decision to question defendant without

counsel present did not violate defendant's right to counsel.

*Raber* at ¶ 20, citing *Curtis* at ¶ 14

{¶ 41} The Eighth Circuit similarly stated in *Dormire v. Wilkinson*, 249 F.3d 801 (8th

Cir.2001):

Considering the question in context, it is not clear that [the defendant] was

actually requesting the presence of an attorney when he asked "Could I call my

lawyer?" [The defendant] had just asked whether he could contact his girlfriend,

and [an officer] had informed him that he could not. [The officer] could have

reasonably believed in these circumstances that [the defendant] was merely

inquiring whether he had the right to call a lawyer, rather than believing that [the

defendant] was actually requesting counsel.

*Raber* at ¶ 21 citing *Dormire* at 805.

{¶ 42} The Ninth District in *Raber* also cited multiple cases from Ohio courts that found

certain statements or questions failed to amount to an unambiguous and unequivocal request for

counsel. The following are analogous to the case before us:

* * * *State v. Knight,* 2d Dist. No. 04–CA–35, 2008-Ohio-4926, 2008 WL

4369764, ¶ 9, 112 (defendant's inquiry "Well, can I talk to my lawyer then if

there is something wrong like that? Do I need one or something?" held to be, "at

best, * * * two equivocal requests for counsel"); * * * *State v. Wellman,* 10th Dist.

No. 05AP–386, 2006-Ohio-3808, 2006 WL 2057895, ¶ 26 ("appellant's equivocal

statement 'I think I need a lawyer, 'cause I don't know what you're talking about

DNA,' does not amount to an invocation of counsel"); * * * *State v. Williams,* 10th Dist. No. 03AP–4, 2003-Ohio-7160, 2003 WL 23024526, ¶ 51 ("appellant's asking [police], 'Where's my lawyer?' is not the same as saying, 'I want a lawyer.' It is, in and of itself, an equivocal statement"); * * * *State v. Metz* (Apr. 21, 1998), 4th Dist. No. 96 CA 48, 1998 WL 199944, at *13 (defendant did not assert his right to counsel when he stated, "Maybe I should talk to an attorney."); *State v. Greene* (Dec. 14, 1993), 4th Dist. No. 92 CA 32, 1993 WL 525008, at *2 (defendant did not unambiguously and unequivocally request counsel where he followed the question "Do you want a lawyer present with you right here at this time?" with the response "Well, if you got one available.")

*Id.* at ¶ 19.

{¶ 43} The case before us presents a close question as to whether or not Gurley invoked her *Miranda* right to counsel. In addition to the above listed cases, in *Davis*, the United States Supreme Court found that the suspect's statement, "maybe I should talk to a lawyer" failed to amount to an invocation of counsel. Also, the Ohio Supreme Court, in *State v. Henness*, 79 Ohio St.3d 53, 679 N.E.2d 686 (1997), found that the suspect's statement, "I think I need a lawyer" was not sufficiently clear to require the termination of questioning. The Ohio Supreme Court has found that a suspect's statement, "don't I supposed to have a lawyer present" was "at best ambiguous." *State v. Brown,* 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 19. In contrast, this Court recently held that a suspect's statement, "I want a lawyer" was an unequivocal request for counsel. *State v. Gerald*, 4th Dist. Scioto No. 12CA3519, 2014-Ohio-3629, ¶ 80.

{¶ 44} It is clear that there are no magic words a defendant is required to state in order to invoke her/his *Miranda* right to counsel. Instead, the law demands that a suspect must convey a clear, present desire to consult with counsel so that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis* at 459. Here, we find that Gurley's statement, "Is there anybody I can call- someone, a lawyer or anything, because I don't - I still don't - I still don't understand" was, on its face, ambiguous. While it might be interpreted as Gurley asking Trooper Lewis if she can call an attorney, it might also be interpreted as a request to call, "someone" or "anybody".

{¶ 45} Also, Gurley's question is followed by a statement that she does not understand. Examining the context of Gurley's statements, Trooper Lewis could have reasonably believed that Gurley was inquiring about her rights, as opposed to actually requesting counsel. In fact, Trooper Lewis asked Gurley, "What are you having a problem with?" While, Gurley's later assertion, "Right. And I asked if I can talk to someone because I still- -" may reference her earlier question, we do not find that it adds clarity to it. If anything, the statement indicates Gurley desired to talk to someone other than an attorney. On the other hand, Trooper Lewis's response: "Well, I don't want you calling anybody" indicates that he subjectively understood Gurley's desire to, at the very least, call someone because she clearly did not understand her situation. In context, Trooper Lewis's statement presents a potentially difficult issue as to whether he knew Gurley wanted to get legal advice.

{¶ 46} Ultimately, however, it is not enough that Gurley might be invoking the right to counsel. *Davis* at 459. The United States Supreme Court has declined to require police officers to clarify a suspect's equivocal or ambiguous statement regarding the right to counsel. *Id.* (stating "If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the

officer stop questioning the suspect.") The Supreme Court has stated: "[W]hen a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Id.* at 461. While Trooper Lewis may not have engaged in good police practice when he stated, "I don't want you calling anybody," the law does not require him to cease his questioning in light of Gurley's equivocal and ambiguous statements.

{¶ 47} Accordingly, we must find that Gurley did not unequivocally and unambiguously invoke her right to counsel. We need not address whether or not Gurley reinitiated questioning since she did not invoke her right to counsel. Accordingly, the trial court did not err by failing to find that Gurley invoked her right to counsel. Gurley's first assignment of error is overruled.

### IV. Conclusion

{¶ 48} Having overruled both of Gurley's assignments of error for the reasons stated above, we find that the trial court did not err by denying Gurley's motion to suppress. Therefore, the judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court

By:_____
Marie Hoover, Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.